## ATCHISON v. MARTIN VENEER CORPORATION.

### No. 8655.

Circuit Court of Appeals, Fifth Circuit.
April 16, 1938.

R. W. Thompson, Jr., and Bidwell Adam, both of Gulfport, Miss., for appellant.

E. J. Ford, of Pascagoula, Miss., for appellee.

Before FOSTER, SIBLEY and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

E. W. Atchison sued his employer, Martin Veneer Corporation, for damages for a physical injury due to a fall on the premises where he worked. A verdict was directed against him, and he appeals.

The evidence is that he was a man of 57 years, and had been at work only four nights stacking kiln dried veneers in a large warehouse whence they were to be shipped over a railroad track which ran alongside the warehouse between it and the public road. Five or six large doors opened on the track for loading, their sills being of a height to match the floors of the cars, which would be stopped in front of the doors for the veneer to be trucked in. The doors were about 4 feet above the track, and had no steps or other approach from without. But the men used one of them to enter the warehouse from that side by laying a long, thick plank with one end resting on the sill and the other on the ground across the track. The plank was removed when cars were placed. Inside the door there was a runway for the trucks because the floor was 18 inches higher than the doorsill. The superintendent knew of this use by day, and had not objected. He did not know the door was used at night. On the contrary, the night watchman was instructed to close the doors at night. The entrances to the warehouse intended for use by employees were on the other side. There were two "lavatories" provided, one on the side where the last-named entrances were and the other across

the railroad and public road about 80 yards away on the edge of a swamp. The latter was intended for hands working in the "plug mill," but was also used by hands in the warehouse by going through the door first above described. Atchison worked at night, but had seen the last-mentioned lavatory in passing along the public road and had seen the railroad track, but had not particularly noticed it or the warehouse doors opening on it. On the night in question, having to go out to relieve himself and knowing only of this lavatory, and having seen others go and come through this door, he attempted to do likewise. He says he walked down the runway and found the door open, that the lights in the warehouse were distant from it and the night dark without, so that he could see nothing beyond the door. He supposed there were steps outside and stepped down accordingly, lost his balance, and fell on the track and was injured.

These facts show no actionable negligence on the part of his master. The place of work was safe enough. Atchison had left his work, necessarily to be sure, but still to attend to a matter of his own. He asked no one where or how to go, but chose his own way. It was a way not provided by the master for the purpose. It was unlighted and dangerous at night, but it was not shown that anyone representing the master either authorized or knew of its use as a passageway at night. There is conflict whether the door was closed that night or not, but supposing that it was open there was no breach of duty by the master. The night watchman, a fellow servant, had failed to close it as he was instructed to do, or else some other fellow servant had opened it and left it so. Nor can we recognize any duty of the master to shut his employees in at night like children. It was not to be supposed that they would step out of openings evidently built for other uses into the dark. This accident is blamable only on this man, who undertook to leave his place of work by a way he had not entered it and had never been told to use, stepping into the darkness and the unknown without any precaution to ascertain whither he was going.

Judgment affirmed.